UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| JOSE RAMIREZ,<br>    Petitioner,<br><br>        v.<br><br>WARDEN TIMETHEA PULLEN,[1]<br>    Respondent. | No. 3:22-cv-279 (SRU) |

### ORDER ON MOTION TO DISMISS

Petitioner, Jose Ramirez ("Ramirez"), proceeding *pro se*, filed a habeas petition pursuant to 28 U.S.C. § 2241. *See* Doc. No. 1. Principally, Ramirez seeks modification of his sentence to home confinement, or in the alternative, immediate release to supervised release, due to the threat of coronavirus ("COVID-19"). Additionally, Ramirez requests an evidentiary hearing, appointment of counsel, and an immediate bail hearing. *Id.* at 18. In response, Respondent Warden of Federal Corrections Institution Danbury, Timethea Pullen ("Pullen"), filed a motion to dismiss. Doc. No. 8. For the following reasons, Pullen's motion to dismiss is **granted**.

### I.     BACKGROUND

On May 1, 2015, before the Honorable Howard F. Sachs, U.S. District Judge for the Western District of Missouri, Ramirez entered a guilty plea to one count of conspiracy to distribute methamphetamine, and one count of money laundering. *See United States v. Ramirez et al.*, Dkt. No. 4:12-cr-379, Doc. Nos. 314, 321 (W.D. Mo. 2015) [hereinafter "*Missouri Case*"]. On November 2, 2015, Judge Sachs sentenced Ramirez to a 216-month term of incarceration,

---

[1] Under Federal Rule of Civil Procedure 25(d), Warden Timethea Pullen is substituted as the appropriate Respondent in this matter. I direct the clerk to correct the docket to reflect that Warden Pullen is now the Respondent in this matter.

and a five-year term of supervised release to follow. *See Missouri Case*, Doc. No. 375. Ramirez's projected release date is March 24, 2030.

Presently, Ramirez is incarcerated in Connecticut at Federal Correctional Institution, Danbury ("FCI Danbury"), which has a history of significant COVID-19 outbreaks. In April 2020, former Attorney General William Barr issued a memorandum that identified FCI Danbury as a facility that was experiencing "significant levels of infection" and directed the Bureau of Prisons ("BOP") to prioritize FCI Danbury and two other facilities in its use of home confinement.[2] On May 12, 2020, U.S. District Judge Michael P. Shea recognized in *Martinez-Brooks v. Easter* that there was a "serious outbreak" at FCI Danbury and entered a temporary restraining order "aimed at accelerating the process for evaluating inmates for home confinement and compassionate release." 459 F. Supp. 3d 411, 439, 453–54 (D. Conn. May 12, 2020).

Against that backdrop, Ramirez filed an application with the BOP for home detention. That application was denied, which prompted Ramirez to file the instant petition for habeas relief. Therein, Ramirez relies, in part, on the *Martinez-Brooks* decision to argue that the BOP's denial of his home confinement application violates the Eighth Amendment. He contends that the lack of social distancing at FCI Danbury is of grave concern because his medical conditions place him at greater risk of suffering life threatening complications if he contracts COVID-19. *See* Pet., Doc. No. 1, at 16–17. For that alleged constitutional violation, Ramirez requests that this Court: (1) grant him "immediate release to supervised release or order home confinement"; (2) appoint counsel; (3) grant him an evidentiary hearing; and (4) grant him an immediate bail hearing. *Id.* at 18.

---

[2] *See* Atty. Gen. William Barr, Increasing Use of Home Confinement at Institutions Most Affected by COVID-19, (Apr. 3, 2020), https://www.justice.gov/file/1266661/download.

On February 22, 2022, I entered an order to show cause. *See* Order, Doc. No. 5. Pullen responded and filed the instant motion to dismiss. Resp. Mot. to Dismiss, Doc. No. 8. In support of her motion, Pullen argues that this Court lacks the authority to grant Ramirez's request for home confinement and adds that the Prison Litigation Reform Act ("PLRA") affirmatively prohibits this Court from doing so. *Id.* at 3.

## II.   LEGAL STANDARD

A court "reviews a motion to dismiss a habeas petition according to the same principles as a motion to dismiss a civil complaint under Fed. R. Civ. P. 12(b)(6)." *Spiegelmann v. Erfe*, 2018 WL 1582549, at *1 (D. Conn. Mar. 29, 2018).

A motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6) is designed "merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof." *Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 779 (2d Cir. 1984) (quoting *Geisler v. Petrocelli*, 616 F.2d 636, 639 (2d Cir. 1980)). When deciding a motion to dismiss pursuant to Rule 12(b)(6), the court must accept the material facts alleged in the complaint as true, draw all reasonable inferences in favor of the plaintiffs, and decide whether it is plausible that plaintiffs have a valid claim for relief. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007); *Leeds v. Meltz*, 85 F.3d 51, 53 (2d Cir. 1996).[3]

Under *Twombly*, "[f]actual allegations must be enough to raise a right to relief above the speculative level" and assert a cause of action with enough heft to show entitlement to relief and "enough facts to state a claim to relief that is plausible on its face." 550 U.S. at 555, 570; *see*

---

[3] In deciding a motion to dismiss, I may also consider documents attached to the complaint, documents incorporated by reference therein, documents relied on in bringing the action which were in petitioner's possession or of which petitioner had knowledge, and matters of which judicial notice may be taken. S*ee Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152–53 (2d Cir. 2002).

3

*also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). The plausibility standard set forth in *Twombly* and *Iqbal* obligates the plaintiff to "provide the grounds of his entitlement to relief" through more than "labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (cleaned up). Plausibility at the pleading stage is nonetheless distinct from probability, and "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of [the claims] is improbable, and … recovery is very remote and unlikely." *Id.* at 556 (cleaned up).

Because Ramirez filed his petition *pro se*, I must construe his filings "liberally" and interpret them "to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006); *see also Ruotolo v. I.R.S.*, 28 F.3d 6, 8 (2d Cir. 1994) (explaining that *pro se* litigants should be afforded "special solicitude" because they are not represented by counsel).

**III.  DISCUSSION**

  A.  Section 2241

This Court is authorized to issue a writ of habeas corpus under 28 U.S.C. § 2241(c)(3) when a prisoner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). In the Second Circuit, "[a] writ of habeas corpus under [Section] 2241 is available to a federal prisoner who does not challenge the legality of his sentence, but challenges instead its execution subsequent to his conviction." *Carmona v. United States Bureau of Prisons*, 243 F.3d 629, 632 (2d Cir. 2001). That includes challenges to conditions or actions that pose a threat to an inmate's medical wellbeing. *See Levine v. Apker*, 455 F.3d 71, 78 (2d Cir. 2006) (providing that "execution of a sentence" covers challenges to conditions of confinement);

*Thompson v. Choinski*, 525 F.3d 205, 209 (2d Cir. 2008); *Jiminian v. Nash*, 245 F.3d 144, 146 (2d Cir. 2001).

In reviewing such petitions, a "district court has inherent power to enter an order affecting the custody of a habeas petitioner who is properly before it contesting the legality of his custody," *Ostrer v. United States*, 584 F.2d 594, 597 n.1 (2d Cir. 1978), if the petitioner can show that: (1) "the habeas petition raises substantial claims;" and (2) "extraordinary circumstances exist that make the grant of bail necessary to make the habeas remedy effective." *Mapp v. Reno*, 241 F.3d 221, 230 (2d Cir. 2001) (cleaned up). The *Mapp v. Reno* standard is "difficult" to satisfy, *id.* at 226, but it is not insurmountable. Throughout the COVID-19 pandemic, district courts have relied on *Mapp* to consider whether to issue "bail or temporary release orders to 2241 petitioners who have argued that their conditions of confinement and medical histories make them especially vulnerable to serious illness from COVID-19." *Martinez-Brooks*, 459 F. Supp. 3d at 431 (collecting cases). Against that backdrop, I address the Pullen's first argument.

Principally, Ramirez styles this action as a Section 2241 claim. He requests release to home confinement or supervised release. Pullen contends that Ramirez, in effect, seeks review of the BOP's denial of his request to be transferred to home confinement, a decision that the statute exclusively vests with the BOP. Section 3621(b) states, in part, that "[n]otwithstanding any other provision of law, a designation of a place of imprisonment under this subsection is not reviewable by any court." 18 U.S.C. § 3621(b)(5). To the extent that the Ramirez's claim arises under that statute, I agree.[4]

---

[4] In doing so, for the reasons set forth in this order, I take care not to divest the BOP of its authority to determine whom to designate to home confinement nor sit in review of the BOP's decision not to designate the petitioner for home confinement.

5

But Ramirez does not solely seek designation to home confinement. Liberally construed, Ramirez seems to argue that there is no set of conditions of confinement that would be constitutionally permissible, in light of the risks arising from the COVID-19 pandemic and Ramirez's alleged medical vulnerability. Accordingly, Ramirez appears to request that this Court exercise its "inherent authority to admit to bail individuals," including habeas petitioners, "properly within [its] jurisdiction." *Mapp*, 241 F.3d at 226; *see also*, *e.g.*, *Daum v. Eckert*, 2020 WL 5040596, at *2 (E.D.N.Y. Aug. 26, 2020), *aff'd in part, appeal dismissed in part*, *as amended*, 2021 WL 4057190 (2d Cir. Sept. 8, 2021) (construing a COVID-19-related filing as a motion for bail pending the resolution of his habeas proceeding). Therefore, I choose to review Ramirez's petition as seeking bail or release under *Mapp*, rather than as limited to only seeking redesignation to home confinement.

1. *Prison Litigation Reform Act*

Liberally construing Ramirez's petition accordingly, the Respondent's argument that the PLRA bars the relief Ramirez seeks is unavailing. Ramirez does not allege that FCI Danbury should implement certain measures to protect him from COVID-19. By seeking only release, Ramirez really alleges that there is no set of conditions that would be sufficient to cure the alleged constitutional injury. Said differently, I understand his petition to challenge the "fact of [his] confinement" in the manner of the *Martinez-Brooks* petitioners and others similarly situated, thus exempting his claim from the PLRA. *See Martinez-Brooks*, 459 F. Supp. 3d at 433 ("The Petitioners in this case are challenging the conditions of their confinement but they are also challenging the 'fact . . . of confinement in prison.' Specifically, they contend that their medical histories and the outbreak at FCI Danbury combine to place them in grave danger from COVID-19; that at current facility population levels, they and other FCI Danbury inmates cannot comply with CDC guidelines for physical distancing; and that '[a]s long as prisoners are unable

6

to practice physical distancing, any other mitigating steps will fail to decrease meaningfully the risk of COVID-19 infections at FCI Danbury.'"); *accord Wilson v. Williams*, 961 F.3d 829, 838 (6th Cir. 2020) ("Our precedent supports the conclusion that where a petitioner claims that no set of conditions would be constitutionally sufficient the claim should be construed as challenging the fact or extent, rather than the conditions, of the confinement."); *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 357 (S.D.N.Y 2020) ("Given the unique nature of COVID-19, its transmission, and the measures required for its prevention, the Court finds that [the petitioners' petition]" both challenges the conditions of confinement and the fact or duration of confinement, "and that such a hybrid action is not covered by the PLRA."). *But see Alvarez v. Larose*, 445 F. Supp. 3d 861, 866–68 (S.D. Cal. 2020). Thus, I reject Pullen's argument that Ramirez's claims are necessarily subject to the PLRA.

    2.  *Mapp Standard*

Turning to merits of Ramirez's claims, I focus on whether Ramirez has satisfied the *Mapp* standard. The short answer is no. Setting aside whether Ramirez has satisfied "extraordinary circumstances," he certainly has not established that his petition raises "substantial claims." *Mapp*, 241 F.3d at 226.

*Mapp* requires that the petition sets forth a substantial claim. A claim is "substantial" where the petitioner demonstrates that he is "very likely to succeed" on the claim. *United States v. Manson*, 788 F. App'x 30, 32 (2d Cir. 2019). Ramirez's challenge to the conditions of his confinement arises under the Eighth Amendment, which prohibits "cruel and unusual punishments," U.S. Const. amend. VIII, and protects prisoners' rights to "humane" conditions of confinement. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). To state a substantial claim, Ramirez must satisfy both an "objective" and "subjective" prong. *Id.* at 834.

To satisfy the "subjective" prong, prison officials must have acted with a "sufficiently culpable state of mind," constituting "'deliberate indifference' to inmate health or safety." *Id.* (cleaned up). To begin, Ramirez does not specify what specific medical ailments he has that render him particularly vulnerable to serious illness should he contract COVID-19, and thus does not set forth a basis for a deliberate indifference claim. Furthermore, Ramirez cannot satisfy that standard because he has not taken all the steps necessary to fully protect himself from the virus. Although Ramirez received two doses of the vaccine, he declined a booster. *See* Gov. Ex. A, Doc. No. 8-1. Ramirez cannot state a claim for a deliberate indifference where he has refused treatment. *E.g.*, *Milchin v. Warden*, 2022 WL 1658836, at *5 n.2 (D. Conn. May 25, 2022) (providing that the petitioner's refusal to be vaccinated "undercut[] any claim for deliberate indifference to medical needs"); *see also United States v. Zaidan*, 2022 WL 1222997, at *2 (N.D. Ind. Apr. 26, 2022) (denying compassionate release where inmate refused booster because "[i]t would not be sensible to conclude that an inmate can refuse a vaccine and then be heard to argue that he must be released from custody because he has no protection from the very disease the vaccine has been shown to successfully prevent (or at least diminish).").

Therefore, I **dismiss without prejudice** Ramirez's Section 2241 petition because he has failed to assert a substantial claim upon which the relief he seeks, release from prison on bail to protect him from COVID-19, might be granted.

B. Alternative Relief

Even if bail under Section 2241 is unavailable, there are two alternative ways to interpret Ramirez's petition; first, as a motion for home confinement pursuant to 18 U.S.C. § 3624(c); or second, as a motion for compassionate release pursuant to 18 U.S.C. § 3582(c). It is important to recognize that requests for home confinement and compassionate release arise from different

8

statutory schemes, each with its own considerations and limitations. Regardless of which statute is considered, this Court lacks the authority to order the requested relief.

Under 18 U.S.C. § 3624(c)(1), the BOP may use its authority "to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months." 18 U.S.C. § 3624(c)(2). Under that provision, Ramirez would not be eligible for home detention given the remaining years he has left to serve. The Coronavirus Aid, Relief, and Economic Security Act ("CARES Act"), however, expanded the BOP's authority under 18 U.S.C. § 3624(c)(2) to release prisoners from custody to home confinement. The CARES Act gave former Attorney General Barr the power to "lengthen the maximum amount of time for which the Director [of BOP] is authorized to place a prisoner in home confinement." Pub. L. No. 116-136, § 12003(b)(2), 134 Stat. 236 (Mar. 27, 2020). But that extension, which presumably affected Ramirez's eligibility for home confinement, reserved the determination of suitable candidates for home confinement to the BOP. Said differently, Section 3624(c)(1), even as amended by the CARES ACT, does not authorize a district court to release a defendant to home confinement. The BOP has the exclusive authority to determine the facility where an inmate will serve his sentence and to transfer the inmate from one facility to another. *See United States v. DiBiase*, 857 F. App'x 688, 689–90 (2d Cir. 2021) (declining to definitively reach the question but noting that "[o]ther Circuits … have held that this power rests solely with the [BOP]."); *United States v. Engelson*, 2020 WL 1821797, at *1 (S.D.N.Y. Apr. 10, 2020) (explaining that courts may make recommendations to the BOP but the ultimate decision of releasing an inmate to home confinement is the BOP's). Accordingly, any request to order the BOP to transfer Ramirez to home confinement pursuant to Section 3624(c) must be **dismissed with prejudice**.

Unlike Section 3624(c)(2), however, the compassionate release statute *does* state that courts "may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment)." 18 U.S.C. § 3582(c)(1)(A). Home confinement is one of conditions that can be imposed with supervised release. *See, e.g., United States v. Brooks*, 2020 WL 2509107, at *6 (C.D. Ill. May 15, 2020) (granting compassionate release and imposing "home confinement" as a condition of release). Indeed, Ramirez himself, refers to several cases where home confinement was imposed as a condition of release for individuals formerly housed at FCI Danbury. *See, e.g., United States v. Delgado*, 457 F. Supp. 3d 85, 92 (D. Conn. 2020) (granting compassionate release and imposing home confinement as a condition of release); *United States v. Sawicz*, 453 F. Supp. 3d 601, 606 (E.D.N.Y. 2020) (same); *United States v. Sedge*, 2020 WL 2475071, at *4 (E.D.N.Y. May 13, 2020) (same).

But there is an important caveat: a motion seeking compassionate release is addressed to the sentencing court. *See United States v. Long*, 997 F.3d 342, 348 (D.C. Cir. 2021); *United States v. Raia*, 954 F.3d 594, 595 (3d Cir. 2020). And such motions are filed in the original criminal case. *See Bolden v. Ponce*, 2020 WL 2097751, at *3 (C.D. Cal. May 1, 2020) (district courts "have no authority to reduce a federal inmate's sentence under 18 U.S.C. § 3582(c)(1)(A) pursuant to federal habeas proceeding under 28 U.S.C. § 2241.") (cleaned up). Because Ramirez was sentenced by a different judge in a different district, this Court lacks jurisdiction to consider Ramirez's request for compassionate release. Accordingly, any request for compassionate release should be **dismissed without prejudice** to Ramirez's right to seek such relief in the United States District Court for the Western District of Missouri.[5]

---

[5] It appears that Ramirez filed such a motion in the sentencing court, and the motion was denied. *See Missouri Case*, Doc. Nos. 490, 494.

    C.  Remaining Requests

In Ramirez's petition, he briefly requests an evidentiary hearing, appointment of counsel, and an immediate bail hearing. Because I am granting Pullen's motion to dismiss, Ramirez's requests for an evidentiary hearing and immediate bail hearing are **denied as moot**. His request for appointment of counsel, which I construe to be a motion to appoint counsel, is **granted**. I grant Ramirez leave to file an amended petition within sixty days of the appearance of counsel.

## IV.  CONCLUSION

In sum, to the extent that Ramirez seeks relief arising under 18 U.S.C. § 3624(c) or 18 U.S.C. § 3582(c), Pullen's motion to dismiss is **granted** and those claims are **dismissed with prejudice**. To the extent that Ramirez seeks relief arising under 28 U.S.C. § 2241, Pullen's motion to dismiss is **granted** and that claim is **dismissed without prejudice**. I grant Ramirez leave to file an amended Section 2241 petition within sixty days of the appearance of counsel. Additionally, Ramirez's request for an evidentiary hearing and bail hearing referenced in his petition is **denied as moot**. Ramirez's motion to appoint counsel is **granted**. The Clerk is directed to appoint counsel. Finally, I direct the Clerk to correct the docket to reflect that Warden Timethea Pullen is now the Respondent in this matter.

    So ordered.

Dated at Bridgeport, Connecticut, this 30th day of September 2022.

                                              /s/ STEFAN R. UNDERHILL
                                              Stefan R. Underhill
                                              United States District Judge